IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROBERT CHARLES LEWIS, | : |
| Plaintiff, | : |
| v. | : Civ. No. 20-884-CFC |
| ELKTON NURSING AND REHABILITATION CENTER, | : |
| Defendant. | : |

**MEMORANDUM ORDER**

At Wilmington on this Seventh day of February in 2024, having considered Defendant's motion for summary judgment (D.I. 48);

IT IS HEREBY ORDERED that Defendant's for summary judgment (D.I. 48) is **DENIED** for the following reasons.

I.  **BACKGROUND AND FACTS AS PRESENTED BY THE PARTIES**

Plaintiff Robert Charles Lewis proceeds *pro se* and has been granted leave to proceed *in forma pauperis*. (D.I. 4)  In the Complaint, he alleges he was fraudulently induced by a representative of Defendant Elkton Nursing and Rehabilitation Center to travel from Delaware, where he was hospitalized following a foot procedure, to Maryland to temporarily stay in Defendant's facility. (D.I. 2)

On December 21, 2020, the Court screened the Complaint, identified what appeared to be cognizable and non-frivolous claims within the meaning of 28 U.S.C. § 1915(e)(2)(B), and entered a service order. (D.I. 5)

On May 23, 2022, Defendant filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (D.I. 21) The Court denied the motion, accepting Plaintiff's allegations as true pursuant to the Rule 12(b)(6) standard, liberally construing the Complaint, and concluding, for a second time, that Plaintiff had stated a cognizable and non-frivolous claim for fraud. (D.I. 32)

Following discovery, including Plaintiff's deposition, Defendant filed its motion for summary judgment and a supporting brief. (D.I. 48, 49)[1] Notably, Defendant omitted a substantial number of pages from the deposition transcript, including portions that appear legally significant in their own right or for purposes

---

[1] Defendant notes in its motion that a choice of law issue exists between Delaware and Maryland law. Defendant correctly states that the elements of fraud are the same under Delaware and Maryland law, but that Maryland requires a higher standard of proof—clear and convincing evidence—versus the preponderance of evidence required in Delaware. *See Access Funding, LLC v. Linton*, 482 Md. 602, 654 (Md. 2022); *Pusey v. West*, 1989 WL 48685, at *2 (Del. Super. 1989). Defendant asserts that the Court does not need at this stage to address which burden of proof applies because Plaintiff's claim fails as a matter of law under either standard. The Court agrees that the choice of law issue need not be addressed at this stage, but so concludes because, under either standard, Defendant has failed to establish the absence of a genuine issue of material fact and that it is entitled to judgment as a matter of law.

of context. (*See, e.g.*, D.I. 49-1, missing pages 99-100, pages preceding page 118, pages 123-24, pages 127-32, and pages following page 138). The portions of Plaintiff's deposition transcript available to the Court present the following narrative.

In late January 2020, Plaintiff was hospitalized and immobile in Delaware following a procedure on his foot. He was required prior to discharge to go to a rehabilitation center so that he could get to the point of being able to walk with the assistance of a walker. He was aware of some available facilities where he would not be able to smoke. The first representative that came to the hospital from a rehabilitation center was Defendant's representative. Plaintiff accepted her offer and was transported to Defendant's facility the following day.

Defendant's representative told Plaintiff there was a bed available at the facility and that he could go outside to smoke. When he arrived, however, he was placed in a bed in the Alzheimer's unit on the second floor, even though he does not have Alzheimer's disease. (Plaintiff has schizoaffective disorder.)

Plaintiff spent two weeks in the Alzheimer's unit and described it as "not the healing scene down below," which he experienced when he was moved to the first floor. (D.I. 49-1 at 50) He was bedbound, treated like an Alzheimer's patient, and did not receive physical therapy. When he was in the Alzheimer's unit, a

3

couple of staff members would take three patients, at the most, down to smoke, but would not do so when the staff members did not feel like it. Plaintiff was able to smoke on rare occasions, but not on a daily basis.

It is unclear how often Plaintiff was able to smoke when he was moved from the Alzheimer's unit to the main floor, and whether he was still bedbound and/or had to be transported to do so. It appears that counsel may have asked him at the bottom of page 126 of the deposition transcript how often he smoked when he was on the main floor, or perhaps how often he smokes regularly when not hospitalized, but the end of the sentence and the next seven pages of the transcript are omitted. Later in the transcript, immediately after establishing that Plaintiff had to be transported from the second floor Alzheimer's unit by staff members in a wheelchair to go outside to smoke, counsel asked Plaintiff if he was able to "smoke freely" after he was transferred out of the Alzheimer's unit and he affirms that he was able to do so. It is unclear if Plaintiff had to be transported outside from the first floor in a wheelchair with the assistance of staff. (*Id.* at 58)

Plaintiff alleged in the deposition that his damages were not receiving physical therapy for the two weeks he was in the Alzheimer's unit, and then receiving inadequate physical therapy, both of which resulted in what should have been a two-week stay lasting for five weeks. Plaintiff testified that "you can't

4

leave that place until the service discharges you," and that even though a doctor had discharged him weeks earlier, because he was born with his foot at a slight angle, they forced him to stay and undergo additional physical therapy to attempt to straighten it, and to reach certain benchmarks with pedaling a bike, which damaged his knee. (*Id.* at 73).

Plaintiff conceded that he was bedbound when he arrived at Defendant's facility and was able to walk with the assistance of a walker when he left.

Plaintiff has not filed a response to Defendant's motion for summary judgment, and the time to do so has passed.

## II.   LEGAL STANDARD

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the burden of persuasion at trial would be on the nonmoving party, then the moving party may satisfy its burden of production by pointing to an absence of evidence supporting the nonmoving party's case, after which the burden of production shifts to the nonmovant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Williams v. West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989).

Material facts are those "that could affect the outcome" of the proceeding. *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011). "[A] dispute about a material fact is genuine if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." *Id.* (internal quotation marks omitted). A non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, . . . admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the moving party] do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1). The non-moving party's evidence "must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Williams*, 891 F.2d at 460-61.

The court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Wishkin v. Potter,* 476 F.3d 180, 184 (3d Cir. 2007). "[T]he facts asserted by the nonmoving party, if supported by affidavits or other evidentiary material, must be regarded as

6

true . . . ." *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080 (3d Cir. 1996). If "there is any evidence in the record from any source from which a reasonable inference in the [nonmoving party's] favor may be drawn, the moving party simply cannot obtain a summary judgment." *Id.* at 1081 (internal quotation marks omitted).

### III.   DISCUSSION

The five elements of a fraudulent inducement claim are essentially identical under both Delaware and Maryland law: (1) a false representation made by the defendant to the plaintiff, (2) the falsity of the representation was known to the defendant or the representation was made with reckless indifference as to its truth, (3) the defendant intended to induce or defraud the plaintiff with the misrepresentation, (4) the plaintiff justifiably relied on the misrepresentation, and (5) the plaintiff suffered compensable injury resulting from the misrepresentation. *See Hauspie v. Stonington Partners, Inc.*, 945 A.2d 584, 586 (Del. 2008); *Moscarillo v. Prof'l Risk Mgmt. Servs.*, 921 A.2d 245, 254 (Md. 2007).

Defendant's argument, briefly, is as follow. First, there is "no" evidence that anyone representing Defendant made a false statement to him about smoking privileges and accommodations in Defendant's facility. Second, Plaintiff cannot establish that the representative knowingly or recklessly made false statements to

7

Plaintiff. Third, there is "an absence of evidence" that Defendant's representative made the alleged misrepresentation for the purpose of inducing Plaintiff to transfer to Defendant's facility. Fourth, Plaintiff's reliance on the representative's alleged statements about smoking and accommodations was unreasonable and unjustified. Finally, there is not "sufficient evidence" that Plaintiff suffered damages or compensable injuries.

The Court will address Defendant's contentions in turn. First, contrary to Defendant's assertion, there is evidence that a representative of Defendant made a false statement to Plaintiff about smoking privileges and accommodations in Defendant's facility. That evidence is Plaintiff's sworn deposition testimony. Defendant contends that because Plaintiff did not serve discovery requests or engage in fact finding to identify the representative, whom he described as a "heavy set" and "well-dressed woman," judgment should be entered in Defendant's favor. This argument, of course, goes to the weight of Plaintiff's evidence, rather than the existence of evidence, and is not relevant on summary judgment. Defendant cites inapposite case law for the proposition that dismissal of a fraud claim was appropriate where the "plaintiff failed to identify the speaker or inject 'a degree of precision' to provide sufficient notice to the defendant of the alleged fraud." (D.I. 49 at 14-15) (quoting *Kirchner v. Wyndham Vacation*

8

*Resorts, Inc.*, 2021 WL 1198314, at *4 (D. Del. March 30, 2021)) The Court notes that it is undisputed on this record that Plaintiff was transported to Defendant's facility on January 30, 2020, where he stayed as a patient for 45 days. That appears to be precise enough information to provide Defendant with sufficient notice to identify the relevant party or parties.[2]

Defendant further asserts that, as a result of Plaintiff's failure to identify Defendant's representative, her statements constitute inadmissible hearsay. Defendant is mistaken. The representative's statements would not be introduced for the truth of the matters asserted. To the contrary, they would be introduced to show the alleged falsity of the matters asserted and Plaintiff's alleged detrimental reliance upon hearing them.

Next, in arguing that Plaintiff cannot establish that the representative made a false statement, Defendant asserts:

> Plaintiff admitted that when he arrived at the facility, he was assigned to a bed. There is no evidence that the representative promised him a specific room in a specific unit. Moreover, Plaintiff conceded that he was permitted to smoke at [Defendant's] facility, which was consistent with the representative's representation.

---

[2] The Court further notes that under Rule 26(a)(1)(A) of the Federal Rules of Civil Procedure, Defendant had a duty, "without awaiting a discovery request, to provide to the other parties . . . the name . . . of each individual likely to have discoverable information . . . that the disclosing party may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(i)

9

(D.I. 49 at 16)   This characterization, however, is at odds with Plaintiff's deposition testimony.   At the very least it is a question for the jury whether the promise of a bed in a rehabilitation unit to a patient who does not suffer from Alzheimer's disease would implicitly mean the bed would not be in the Alzheimer's unit, particularly given that it is undisputed on this record that Plaintiff did not receive physical therapy during his two weeks in the Alzheimer's unit.   *See Schmeusser v. Schmeusser*, 559 A.2d 1294, 1297 (Del. 1989) (noting that "fraud may be committed through the deliberate concealment of material information, or by silence in the face of a positive duty to speak," and that "[w]hen so required to disclose material facts, a failure to reveal information necessary to prevent statements actually made from being misleading is also fraudulent conduct").   Furthermore, although Plaintiff conceded in his testimony that he was permitted to smoke freely after he was moved from the Alzheimer's unit, he also testified that he was rarely permitted to do so while in the Alzheimer's unit, and not on a daily basis.   The Court notes that Defendant's argument is impossible to fully evaluate at this stage, given Defendant's omissions of what appear to be legally significant portions of the deposition transcript.

Defendant next argues that, even accepting that the representative's statements were false, "Plaintiff cannot point to any direct or circumstantial

evidence to show that [Defendant's representative] made the statements with a conscious disregard for the truth, and with the intent to induce Plaintiff to transfer to [Defendant's facility]," particularly given that Plaintiff "required rehabilitation treatment and [Defendant's facility] was his only option."  (D.I. 49 at 16)   First, Plaintiff's testimony indicates that he was induced by the representative's alleged false statements, as he agreed to be transported to the facility the following day.  Second, it is a mischaracterization of the record to conclude definitively that Defendant's facility was Plaintiff's "only option," given that Plaintiff testified that it was the first offer he received and he immediately agreed to be transported to the facility the following day.  Finally, Plaintiff's deposition testimony, at least the excerpts provided to the Court, indicates that he was immediately taken from Defendant's transport and placed into the Alzheimer's unit upon arrival, with the apparent plan of him staying there for the duration of his stay, rather than as a stop-gap measure when it was surprisingly learned that a normal bed was not available.  These circumstances can be considered evidence that the representative's statement that a bed was available knowingly omitted crucial information about the location of the bed and its impact on Plaintiff's ability to receive rehabilitation and smoke.  Again, Defendant's arguments go to the weight of the evidence, rather than the existence of evidence.

As for Defendant's argument that Plaintiff unreasonably relied on the alleged false statements, Defendant asserts that it was not justifiable for Plaintiff to rely on a promise to "an assignment to a room he preferred." (*Id.* at 17)  This is a mischaracterization of the record for the reasons previously discussed.  Similarly, Defendant's arguments regarding Plaintiff's reliance on the smoking promise both mischaracterize the record and are impossible to fully evaluate given the omissions from the deposition transcript.  Defendant argues that because Plaintiff was bedbound and required assistance with transfer from his bed to his wheelchair, he should have known there would be limitations on his ability to smoke.  There is clearly a difference between limitations on an ability to smoke based on requiring assistance, and being able to smoke only on rare occasions and not on a daily basis.  Furthermore, given the omissions in the deposition transcript, it is unclear whether Plaintiff was still bedbound when he was moved from the Alzheimer's unit, and was then able to "smoke freely."  In other words, it is unclear whether more assistance was available on the main floor to facilitate smoking; the lack of traveling to another floor liberated Plaintiff to wheel himself outside in a wheelchair; or after two weeks of not receiving physical therapy in the Alzheimer's unit, he was no longer bedbound.

Finally, regarding damages, Defendant correctly recites that, "'a recovery for fraudulent misrepresentation is limited to economic damages, *i.e.*, those damages which are the direct and proximate result of the false representation consisting of the loss of bargain or actual expenses,'" and that "a defendant may also be liable for physical harm caused by the conduct." (D.I. 49 at 18) (quoting *Brzoska v. Olson*, 668 A.2d 1355, 1367 (Del. 1995)). Although this is a somewhat close issue, given that Plaintiff did not pay for his stay at Defendant's facility and was not employed at the time and therefore did not lose wages as a result of his allegedly prolonged stay, there is some measure of economic value to one's freedom from being confined to a rehabilitation facility. On this record, Plaintiff's stay at Defendant's facility was extended, by at least two weeks, based on his assignment to the Alzheimer's unit and lack of physical therapy there. He was unable to leave until discharged. Furthermore, both being deprived physical therapy to rehabilitate his foot for two weeks, and being deprived the ability to smoke, could constitute physical harm for purposes of damages.

13

## IV.  CONCLUSION

For these reasons, the Court denies Defendant's motion for summary judgment.

_____
                                            Chief Judge